The court now calls case 118973, People of the State of Illinois v. Taryn R. Burns. Are you ready to proceed? Happily ready? We are. Good morning. May it please the court, counsel. I am Assistant Attorney General Eldred Malamuth here today on behalf of the appellant, the People of the State of Illinois. In this case, officers secured a warrant to search Dependents Apartment based in part on the positive alert of a drug detection dog in the common area landing outside Dependents Apartment. The appellate court determined that the evidence seized in the ensuing search should be suppressed because the dog sniff violated the Fourth Amendment under the test set forth by the defendant. But for three independently sufficient reasons, this court should reverse. One, there was no violation under Jardines. Jardines applies when there is a dog sniff after an unlicensed physical intrusion onto the curtilage of a home. Here, the common area landing was not within the curtilage of Dependents Apartment, and thus Jardines does not apply. Two, in this pre-Jardines search, the officers reasonably relied on then existing precedent to conduct the dog sniff, and they also relied on the warrant issued by the neutral magistrate to conduct the search. And three, even excluding the dog sniff from the warrant application, the facts established probable cause to search Dependents Apartment. Turning to the first reason for reversal, that there was no violation under Jardines. The Fourth Amendment sets forth with precision what it protects. Persons, houses, papers, and effects. Now it applies to the equivalent of single family houses such as apartments, but it only applies to the home and the curtilage. The curtilage is an area so intimately connected, both physically and psychologically, to the home it is considered the home itself for purposes of the Fourth Amendment. It is an area that harbors the intimate activities commonly associated with the sanctity of a person's home and the privacies of life. In this case, the, and Jardines applies only when there's a dog sniff on the curtilage. Here, the common area landing was not the property of the defendant. So it cannot be curtilage. Of course, it could be established that there was a reasonable expectation of privacy in an area that's not curtilage. But that's not the claim here. The claim is that there was a violation under the Jardines property analysis. This was not the defendant's property, and so Jardines cannot apply. It also... Does the majority, and I'm sure we'll break this case down even more since there are a number of different ideas in the Jardines case, but you seem to be making an argument that when there is a single family home that there is a certain zone that the Fourth Amendment will protect. But I don't live in single family homes that have lesser protections, and I'm not sure I see where that comes from from the United States Supreme Court's discussion of property and curtilage. There's this idea of, I think there's a quote about the idea of the state's agents could stand in the home's porch or side garden and trawl for evidence with impunity. The right to retreat would be significantly diminished that the police could enter a man's property to observe his repose from outside his front window. The case itself doesn't seem to be saying only if there is ownership of the property. So how does these ideas of what it means to have certainly very high level of privacy rights in a home fit in when someone doesn't live in a single family home? Is a condo owner in a different position from a renter? Well, Your Honor, Jardine's case does make very clear that it applies a property analysis, and it states very clearly its proposition that there was a Fourth Amendment violation because the dog sniff occurred in an area belonging to the defendant. So what if it's a condo? Does the condominium owner have some joint property rights in the common area? Well, Your Honor, first of all, to be clear, in this case it's not a condominium. Second, in the case of the condominium, there might be different questions about what area belonged to the defendant. And of course, in a condominium, there's a whole set of laws about what the unit owner owns, what the association owns, and there might be questions that would come up in that situation. That is not the case here. But moreover, to the underlying question about the expectation of whether urban dwellers are protected, so the Jardine's case sets forth a property analysis. That's the baseline. That's one way that the Fourth Amendment protects privacy. In this case, it doesn't apply. It's a simple baseline, and the court was clear that it has to do with property. There's a second way that there can be searches under the Fourth Amendment, and that's reasonable expectations of privacy. In this case, the defendant didn't argue reasonable expectation of privacy here. But that would be the question, whether there is a reasonable expectation of privacy in a particular common area or not. That doesn't change the property analysis. That's a separate analysis, and it has nothing to do with the baseline protection. That's the property analysis set forth by Jardines. So one last question. Can we talk a little bit about where we are in terms of Fourth Amendment jurisprudence? In this case, Jardines, we have Justice Scalia and Justice Thomas purely relying on the property idea. We have the other three who concur who move on to the expectation of privacy, and you have the dissenters that talk about expectation of privacy as well as property. So what's your opinion of where are we in terms of Fourth Amendment jurisprudence? Well, Your Honor, obviously there are multiple opinions there. The only opinion that had a majority of the justices was the majority, and so we know that that's the property analysis that the majority talks about in Jardines. Separately, we have a reasonable expectation of privacy analysis. In that case, four justices argued that there would be. We don't know how the other two would rule. So what we do is we look back to prior cases, and that brings us to the second reason why this court should reverse, that the officers at the time acted in pre-Jardines, the Supreme Court was quite clear in a line of cases that the dog sniff was not Fourth Amendment search because it didn't implicate legitimate privacy concerns. It simply revealed the presence of contraband or not, and there's no legitimate privacy interest in obtaining contraband. So to look besides the property analysis, we look back and we see that Jardines explicitly did not, the majority, does not address the reasonable expectation of privacy analysis. And so we look back and we find that it's still the law that the Fourth Amendment in general, that dog sniffs are not Fourth Amendment searches. The officers could reasonably rely in this pre-Jardines search on those cases. The officers could also rely on the cases which held that there was no reasonable expectation of privacy in apartment building common areas. Now, the officers could rely on these cases because the Fourth Amendment says nothing about excluding evidence, even if the searches were unreasonable. The exclusionary remedy is a judicial remedy designed to deter culpable police conduct. It is merited only if police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. And if the officers rely on existing precedent, then existing precedent, for their conduct, their action, their behavior, it's not a matter of exclusionary remedy. Cases I discussed from the United States Supreme Court, and there were cases from this court, such as Bartelt and Bew, which established that dog sniffs were not Fourth Amendment searches. We also had the cases establishing that there's no Fourth Amendment, reasonable expectation of privacy in the common areas of apartment buildings. We had a Seventh Circuit case, multiple Seventh Circuit cases, establishing both. And we know from the LaFleur case, that Seventh Circuit cases, that the officers may rely on Seventh Circuit cases as authority for their conduct. And we also can look to the general legal landscape. And even if none of these cases were binding precedent, which they are, but even if they weren't, we can look to the cases holding that dog sniffs were not searches, that there was no expectation of privacy in apartment building common areas. And these were cases including all the federal circuit courts to address the issue. And looking at this general landscape, we simply cannot say that the conduct of the officers was culpable and needed to be deterred. I have another question, counsel. How does the fact this was a locked common area fit into this analysis? And is there any aspect of trespass that ought to be considered if we are looking at this as a property interest analysis? Well, Your Honor, first, with respect to the locked door, if there's a question about the reasonable expectation of privacy on that front, the Lyles case in the appellate court had specifically found that there was no reasonable expectation of privacy even in locked common areas, even if there was a locked outer door. I was more referencing the property aspect and the idea of trespass. Your Honor, there's no trespass, first of all, in this case, because the officers maybe can go onto the property, onto the defendant's property. There's no relevant trespass in this case. And again, the property analysis that Jardine's discusses has to do with the curtilage and only onto the property of the defendant. There's no relevant trespass or property onto the defendant's property. Counsel, what does the time of day, the dog, have to do with the analysis? The dog sniffed occurred at 3.20 a.m. And how does that factor into our analysis? Well, Your Honor, there's no, again, in terms of the reasonable expectation of privacy, we have two issues. One is the issue at the time. And that's really the relevant issue, because reasonable expectation of privacy hasn't been raised really here as a separate claim. The time the dog sniffed was not a search under the Fourth Amendment. And so the timing of it is irrelevant. And there's no law that would state that the timing of the dog sniff makes the expectation of privacy different. So if you have a traffic stop, for instance, at 1 p.m. versus 1 a.m., if the dog sniff occurs at those two traffic stops, there's no case law suggesting that there's a different result. Of course, there's a discussion in Jardines about nighttime visits. And that's because Jardines has to do, not only was it a property analysis test, it was an implied license test. And so that's just a further reason, of course, why the officers couldn't be expected to predict the result. But so the officers, so the issue in Jardines is whether the implied license given to members of the public to approach the front door or not, which is also extended to officers, whether that applies. And the majority discusses how there's no license to do certain things. And they held there's no license to search dogs. They also discussed there might not be a license to approach in the middle of the night. It's simply not relevant here. Is your good faith argument impacted in any way? This is a 4th District case, right, out of Urbana? Correct. And there was the Krull decision out of the 4th District that held that a search of a locked area was prohibited. And I think you talked about a lot of federal and other state authority that would be contrary to that. I understand it. But is it impacted in any way because of a 4th District case, a 4th District decision? Sure, Your Honor. Well, the Trull case of 1978 was then followed by other cases, including the Smith case from this court, which doesn't apply the Trull analysis. So Trull essentially has made a binary, held that there's a binary test. Locked outer door, expectation of privacy. Not locked outer door, no expectation of privacy. And then Smith, this court doesn't apply that rule. Instead, it looks at a multi-factor test. So after Smith, we are left with essentially the abrogation of Trull, because Smith doesn't apply that reasoning. And instead, it looks at a multi-factor test. And following Smith, the 1st District in Lyles specifically states that Trull has not survived the movements, the changes in 4th Amendment law. And so the Trull was no longer good law, even in the 4th District because of Smith. And certainly, the officers could rely on the more recent case to determine that Trull was not binding on them. And the officers here also could rely on the warrant that they secured from the neutral magistrate. So under Leon, evidence is not excluded when officers rely on a search warrant issued by neutral magistrate, even if the application is later determined insufficient. In this case, officers did exactly what we want them to do. They went, they described in detail what they had done, and the neutral magistrate issued the search warrant that then the officers executed. And unless there was some, unless it was unreasonable, unless there was some belief or faith on the warrant to conduct the search. And finally, as I discussed, even excluding the dog sniff, the warrant application established probable cause for the reasons we discussed in our briefing. Unless there are any further questions, we would ask this question. May it please the court. I am Keith Hayes, and I am appearing for Terran Burns. Madam Chief Justice, I recall more years ago than I wish to my grandmother used to crochet. I saw a look of puzzlement across her face as I discussed how she worked at the edges, constructing a table clock for her Thanksgiving table. And then I saw that look fade as I analogized what she does in constructing her table clock to what we do as we work in the law, always working at the edges, stitch by stitch as we construct a covering for the balance between the arbitrary power of government and its agents and the liberty of the individual. That's what we're doing here today. Now, the state suggests that there is a difference in the protections of our Fourth Amendment between the owner-occupied single residence and someone who is a renter or someone who lives in a multi-unit dwelling. And I suggest that there is no difference in that protection from the most luxurious apartment on the Gold Coast to the rudest habitation in Alexander County, whether it is owned, leased, rented, or even just occupied. Now, when we survey that legal landscape, we need to start 800 years ago with a benchmark on the field of continue that survey down through the present day. And we can see how the authorities in the Anglo-Saxon American system of justice have stitched at the edges, one stitch at a time, covering that situation. Now, the state suggests that the best way that I can describe it is the interior paint on the door to the apartment limits the application of the Fourth Amendment protection. That everything outside of that in a rented unit is fair game. You know, he suggests that we are privileged to search anywhere outside that paint. But consider, this was not a search of the landing. If it was a search of the landing, it would have no application to what was inside the apartment. It was an intrusion, similar to that in Keogh. And I want to remind you that in Keogh, Mr. Justice Scalia made the point that it didn't make any difference whether the police officer with the instrument he was using was standing, because he was standing across the street aiming his instrument at the door. Now, does it make any real difference whether in Keogh they used an electronic device and in this case they used an organic device? Now, the argument of whether or not the reaction of a trained dog can be cross-examined and can be evaluated is for a different day. But that's what we have here. We have a trained dog with a superhuman sense of smell that animal biologists tell us. What that is is an instrument no different from the electronic device used in Keogh. Now, he wants to make a difference between curtilage, which he implies is only applicable in an owner-occupied residence. That doesn't happen to be what curtilage historically means. There was no difference between the lord's castle and the meanest serf's habitation as to what constitutes the curtilage. Now, let's look, and it's in the record with the photograph, you can see that landing. You can see the difference, not much larger than this table, between the space where the dog stood and the door of the dwelling. Now, he's talked about the officers having had the right to act in good faith upon their reliance on what had gone before. First, let's look at the dog sniff cases. Until Jardines, every dog sniff case came up in the context of a public place, whether it be a highway and a traffic stop or an airport lounge or a train station in Bloomington. The sniffs were of personal property, not a home, not a home. They were in a public place, not a locked dwelling. Now, the idea that you don't have a reasonable right of privacy in a locked apartment building is tough for me to swallow. Why would one want to live in a building where the exterior door was secure, if not the expectation that it gave you a level of privacy? He talks about the officer having entered into that locked area, but he doesn't tell you how the officer got in at 3.20 in the morning. And the reason he doesn't tell you is that we don't know. Officer Cervantes was admitted to the locked area by Sergeant Lotion, and we don't know how Mr. Lotion got into the locked area. Counsel, the United States Supreme Court decision in Jardines is based upon property rights. Yes. You are arguing invasion of privacy. It's both. Should we be reluctant to make our decision in this case based upon the privacy or because of the U.S. Supreme Court analysis? Well, the Fourth District asked that very question and asked us to brief it. Frankly, the outcome is the same no matter what logic you use, and it is based upon Mr. Scalia's opinion both in Jardines and in Keogh. One was decided on a, or his logic was on a property-based trespass theory. The other was on an expectation of privacy. Now, we can dance on the head of this pin as to what logic justifies the Fourth District's opinion, but I don't think it's necessary. The expectation of privacy is, as Mr. Justice Scalia said, not a replacement for property rights, but an extension of that doctrine. They both ride together on the same horse. Is it realistic for us to expect that a police officer would be as trained as was the Attorney General in legal research to find the obscure cases on which he might rely when Troll was staring them in the face? Now, when you look at cases after Troll, you see that they were distinguished on their facts. They were shown not to be applicable. They were distinguished. They were not followed on those cases for which the state relies. But they were never overruled. Nobody ever said no, and it was long-standing law in the Fourth District that you had that reasonable expectation of privacy. Now, the state indicates that I'm arguing that anew. It came up in the appellate court. We argued it in the appellate court. With respect to the argument that there is enough, absent the drug snub, the dog snub, to justify probable cause, you have to look at what remains. And I must admit that I have difficulty with the proposition that having rung that bell in the mind of the detached magistrate, you can unring it and put the rest of the stuff on the table. But the rest of the stuff doesn't prove it. What do we know? We know that Taryn Burns lived in that apartment. We know she had an automobile. We know she had a Facebook page on which she advocated the legalization of marijuana. We know that many years before, she had been arrested or at least had a police contact with respect to minor amounts of marijuana. We know that it was a minor because one was approached with a notice to appear and the other one was a class C misdemeanor. We don't know that she was convicted. We know that she was charged. One a decade before, one five years before. We know that if you find that the box observed by Officer Meacham is relevant, we know that she had a correspondence with somebody in California. Frankly, looking at the affidavit, we don't know how big the box was. Was it larger, as they used to say on television, than a bread box? Or was it as small as a diamond ring? We don't know. And we don't know because the officer didn't include that information in his affidavit. So taken as a whole, we know that Taryn Burns advocates the legalization of possession of marijuana. We know that Taryn Burns lives in Apartment 10 at the address in her bag. We know she has a car. We know nothing more than that. We know she knows somebody in California. Other than that, we have only the accusations of an anonymous person who has said what she said about Taryn Burns. We don't have anything corroborated with respect to what he said. The corroboration that the state advances is that the anonymous caller's girlfriend told him that she had bought ecstasy from Taryn Burns. That's what the state has argued is partial corroboration. That corroborates nothing. So you have to take what's alleged in the affidavit and determine whether or not you can unring the bell in the issuing magistrate's mind. And if you can, it's what's left justifying the invasion of Ms. Burns' home. Mr. Hayes, you've talked both about the curtilage and the area outside the door and the invasion of privacy. It occurs to me the state would argue that what the dog did here is sniffed air that came outside the door, so it may be in the curtilage, but certainly not what happened in Kelo, where there was thermal imaging of something inside the apartment. How would you respond to that? If, Your Honor, there is no connection between the air outside and what happened inside, then what are we about here? The purpose of this dog sniff was to find out what was going on inside the apartment. But is there a right of privacy in what goes outside? Haven't we allowed forcing air outside of a car for a dog to sniff? As I understand that case, the question in that case was whether it was proper to force the driver to turn on their air conditioning in order to expel air for the dog to sniff. That was on a public island. That was not on the limited entry. So then you rely on the curtilage, that this is the curtilage as opposed to being public. I don't think that there's a difference between – I don't believe it's public in the first place. But I don't think there's a difference between the curtilage of a front porch of a single-family residence and the area immediately outside the entrance in a rented multi-unit apartment building, especially not in one that has a locked, secure entrance. Now, whether or not you have a reasonable expectation of privacy, I think we've gotten beyond the idea that a dog sniff search does not require a warrant. I think we've gotten beyond that. I think Justice Scalia covered that. The problem is, whether or not the legal landscape, the benchmark of which is the Great Charter, and as we survey it, we come down to the present day, whether or not that authorizes warrant officers. Thank you, Counsel. Thank you, Your Honor. Thank you, Your Honor. A few, hopefully, quick points in rebuttal. First, there has been a suggestion that there's some differentiation the state is trying to make between the castle and a humble home between an owner and a renter. And that's simply not the case. The Fourth Amendment surely applies to the curtilage of all homes, whether it's the most lavish home or the most humble home, but it only applies to the curtilage of the home. And so this attempt to, the suggestion that it's some kind of protection only for wealthy as opposed to the unwealthy is simply not the case. It's whether the landing outside the apartment is the curtilage. Could I ask a question? I keep reading Jardines, and there's lots of ideas. I'm not sure where the quarter is in all of these ideas. But where is the search taking place in terms of this idea of a trespass? Certainly the concurring justices see this as a search of the home. They talk about a stranger comes to the front door of your home carrying super high-powered binoculars. He stands on the porch. He uses binoculars to peer through your windows into your home's furthest corners. And they go on to ask, Has this been an invasion of your home? And their answer is, Yes, it is. So is our concern whether or not there has been government intrusion onto the front porch, the common landing, or into your very home by using either, in this example that the concurrence uses with binoculars, and I think the majority uses the binoculars, I did too, or some other kind of high-powered technology to trespass onto the interior of your home. So which is it? Is this a search somehow of the landing, or is this a search of the home? Your Honor, I'm going to try and answer your question. I'm not trying to evade it. So the idea, for instance, the defendant discusses the Kelo case. And in that case, it's a thermal imaging instrument, which is used from the sidewalk, from the public space, to search the interior of the home. And the United States Supreme Court said, That's not permissible. Now, the defendant wishes to analyze, because it reveals the private, it wasn't a property analysis. It was a violation of the reasonable expectations of privacy. And indeed, it can't be a privacy analysis, because it's conducted from the street, from a public space. And so it's a reasonable expectation of privacy. Defendant suggests, defendant asks, Well, what's the difference between thermal imaging unit and Kelo, and the dots here? Well, the difference, for our purposes, the most important difference, is the United States Supreme Court has expressly rejected this analogy. In the Caballos case, this was the exact argument raised by the defendant there, and in the dissent. And the majority rejects it. The majority says the dog sniff is not the same as Kelo, as the thermal imaging unit, because it only reveals the presence of contraband, and there's no legitimate expectation of privacy in that. It is sui generis. It is its own thing. The United States Supreme Court says, No, it is not the same thing as the thermal imaging unit. Except the majority in Jardines takes a different tap. No, Your Honor. The majority in Jardines does not say that, and that would be, of course, the logical conclusion of that reasoning, the defendant's reasoning, would be that a dog sniff that occurs from the sidewalk, from a public space, would be a violation of reasonable expectations of privacy. That would be the conclusion. If the thermal imaging unit is the same as the dog sniff, then a dog sniff from the road, from the public road, violates reasonable expectations of privacy. But we know that's not the case, because it's been rejected. That exact claim has been rejected, that the dog sniff is the same. And so in Jardines, it's a property analysis. And so it's an unlicensed physical intrusion onto the home, and followed by a dog sniff. So the concern there is that it's a property analysis on the curtilage of the home. It has to be the curtilage of the home for the Jardines property analysis to apply. In this case, it simply wasn't. And that's the case whether it's the fanciest home or the least fancy home. But it also has to do with owners or renters. If you lease a house and that house has curtilage, then that could be a search if the police were to approach the curtilage of the house, of the home, and perform a dog sniff. That's simply not the case here. Now, defendants suggest also that the reason we don't know how the, we don't know exactly how the officer with the drug dog got into the apartment, that we don't know. And there's a reason for that. The reason is that the defendant didn't think it was important. Defendant's theory of the case is that it doesn't matter how the officer got in. This was the defendant's theory of the case, that because the dog sniff occurred and it detected something from the air coming from inside the apartment. So the defendant didn't ask any questions about how the officer got in. The state asked a couple questions, and then the judge, the trial judge, asked a question. But the reason we don't know is the defendant's theory of the case was that this was unimportant. And defendant also, even before this court, he conceded. He conceded, and this is a quote from his brief. He says, while not argued below, Officer Mecham's warrantless entry into the locked, secure apartment building was also a violation of the resident's reasonable expectation of privacy. He says he didn't argue below. That wasn't his theory. And his theory was that it doesn't matter how the officer gets let in. And here we have evidence that the officer with the drug dog was let in by another officer. We have evidence that the officer who came on a separate occasion knocked and was admitted. And there's no suggestion that the officer and the dog got in by any throw-in or anything like that. So we can assume that the officers were let in by another resident. Which, of course, also goes to the reasonable expectation of privacy analysis. Now, finally, with respect to Troll, Smith, in this court, followed Troll. So after Smith, that's the case that courts from then on would look to. Even in the Fourth District, it's not Troll, it's Smith. And then Lyles follows Smith and provides a further gloss and specifically rejects the holding in Troll. So even in the Fourth District, at the time of the search, at the time when the search warrant was executed and the dog sniff occurred, there was Troll was not good luck. Not binding on the officers. Unless there are any further questions, we would ask this court to reverse the judgment. Thank you. Thank you. Case number 118973, people of the State of Illinois v. Taryn R. Burns, will be taken under advisement as Agenda Number 5. Mr. Malamuth, Mr. Hayes, thank you for your arguments this morning. You're excused at this time. Mr. Marshall, the Supreme Court stands adjourned until Tuesday, November 17th at 9 a.m.